## McCaw et al. *v.* Turner et al.

[88 South. 705,   No. 21930.]

Witnesses.    *Statutory prohibition against disclosure by physician of communications of patient survives patient's death and cannot be waived by his heirs, executor, or administrator.*

The prohibition of section 3695, Code 1906 (section 6380, Hemingway's Code), against the disclosure by a physician or surgeon of communications made to him by a patient, except at the instance of the patient, survives the death of the patient, and and cannot be waived by the patient's heir, executor, or administrator.

Appeal from chancery court of Montgomery county.
Hon. J. G. McGowen, Chancellor.

Suit by Alice Moore McCaw and others against Osborne Turner, executor of the will of Mrs. Ella A. Lay, deceased, and others, to have the will set aside on the ground of undue influence and mental incapacity. From a decree upholding the will, plaintiffs appeal.. Affirmed.

*James Stone & Sons,* for appellants.

Section 3695, of the Code of 1906, section 6380, of Hemingway's Code, reads as follows: "All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient.

The first construction of this statute was in the case of the *Y. & M. V. Railway Company* v. *Messina* (1915), 109 Miss. 143, 67 So. 963. This was an action for damages and at the trial the defendant railway company attempted to introduce the testimony of the physicians who had treated the plaintiff at the time of his injury, there being in dis-

pute the quality of the treatment which the plaintiff had received at the hands of these physicians. Upon objection of the plaintiff this testimony was excluded, as being privileged under section 3695 of the Code of 1906.

In *Hamel* v. *So. Ry. In Mississippi* (1917), 113 Miss. 344, 74 So. 276, the same question was at issue. The wife of the deceased patient brought an action for damages for the death of her deceased husband. At the trial of the court allowed the defendant railway company to introduce, over the objection of the widow of the deceased patient, the testimony of a physician who had attended the deceased during his lifetime, and who testified that his death was due proximately to pellagra. Upon appeal, the action of the trial court was reversed, and it was held that this testimony should not have been admitted over the objection of the widow of the deceased patient.

The next case construing this statute was the case of the *Newton Oil Mill Company* v. *Spencer,* (1918), 116-Miss. 568, 77 So. 605. This was also a damage suit for injury sustained and plaintiff introduced in evidence testimony of a physician who had examined him about four weeks after the injury. The defendant Oil Mill Company thereupon attempted to introduce a physician who had examined the patient to testify as to the extent of his injury, but the plaintiff objected to the introduction of this testimony on the ground that it was privileged under section 3695, and his objection was sustained.

The case of the *Sovereign Camp of the W. O. W.* v. *Farmer* (1918), 116 Miss. 626, 77 So. 655, involved merely the question of whether or not in an application for insurance made by the deceased previous to his death, he could waive the privilege given him by section 3695 of the Code of 1906, and it was held that he could.

The last decision of this court which construes this statute is the case of the *United States Fidelity & Guaranty Company* v. *Hood* (1921), 87 So. 115. This case is simply a repetition of the principle enunciated in the case of the *Newton Oil Mill Company* v. *Spencer.*

We have gone into detail with regard to these cases because opposing counsel seems to be laboring under the idea that the question at issue in the case at bar has already been settled by the decisions of this court. Such is not the fact, for the reason that this court has never settled: First, whether or not the power to waive the privilege conferred upon the patient by the statue is a power which is personal to the patient and dies with him, or whether or not it is a power which may be exercised after the death of the patient by those who stand in a personal or representative position as regards the patient. Second, whether or not, if the privilege of the statute may be waived after the death of the patient by parties standing in certain relation to him, contesting heirs at law stand in such relation to the deceased patient as to be able to waive the privilege conferred upon such patient by the statute.

The power to waive the privilege conferred upon the patient by the statute does not die with him, but may be exercised after his death by parties standing in a personal or representative relation as regards such patient.

It is held in almost all jurisdictions, having statutes similar to ours, that the power to waive the privilege of the statute may be exercised after the death of the patient, by those who stand in a personal or representative relation as regards such patient. Wigmore on Evidence (1905 Ed.), section 2391; *Pennsylvania Mutual Life Insurance Co.* v. *Wiler* (1884), 100 Ind. 92, 50 Amer. Rep. 769; *Morris* v. *Morris* (1889), 119 Ind. 341, 21 M. E. 918; *Denning* v. *Butcher* (1894), 91 Ia. 425, 59 N. W. 69; *Eraser* v. *Jennison*, 42 Mich. 209, 3 N. W. 882; *Morris* v. *Morris* (Ind. Sup.), 21 N. E. 919, 12 S. W. 513; *Groll* v. *Tower*, 85 Mo. Law, p. 142; *Gurley* v. *Park* (Ind. Sup.), 35 N. E. 279. To 249; *Association* v. *Beck*, 77 Ind. 230; 19 Am. & Eng. Enc. the same effect are the cases of *Kirsher* v. *Kirsher* (1903), 120 Ia. 337, 94 N. W. 846; *Long* v. *Garey Investment Co.* (1906), 110 N. W. 26; Gen. St. sec. 3649, 2 Mill's Ann. St., sec. 4824; *In Re Parker's Estate* (1907), 111 N. W. 119;

*Groll* v. *Tower* (1884), 85 Mo. 249, 55 Am. Rep. 358; *Thompson* v. *Ish* (1889), 12 S. W. 510.

We conclude, as before, that where the dispute is between the devisees and heirs at law, all claiming under the deceased, whether the devisees or heirs at law, may call the attending physician as a witness. *Olson* v. *Court of Honor* (1907), 100 Minn. 117, 110 N. W. 374, 8 L. R. A. (N. S.) 521.

We shall now proceed to give a list of jurisdiction in which similar statutes have been construed unfavorably to our contention. North Dakota: *Auld* v. *Cathro* (1910), 20 N. D. 461, 128 N. W. 1025, 32 L. R. A. (N. S.) 71. Utah: *In Re Van Alstin's Estate* (1903), 26 Utah, 193, 72 Pac. 942. California: The principal case in California is the case of *In re Flint,* 100 Cal. 391, 34 Pac. 863. New York: *Roche* v. *Nason,* 185 N. Y. 128, 77 N. E. 1007. Michigan: *In re Mansbach's Estate* (1907), 150 Mich. 348, 114 N. W. 65.

It seems clear that both authority and reason indicate that our Misisssippi statute should be so construed as to empower parties who stand in certain personal relation to the deceased patient to waive the privilege conferred upon such patient by section 3695 of the Code of 1906. While the Michigan and New York decisions, under their amended statutes, are not authority for the contention we make here, yet they should have weight as showing the experiences of those jurisdictions, to the effect that the interpretation formerly placed upon their statutes by their courts resulted in such impossible situations that the statutes had to be amended by their legislatures.

If this privilege conferred upon the patient by the statute may be waived, after the death of the patient, by those who stand in a representative relation to him, we contend that heirs at law, even though contesting the will of such patient, stand in such representative relation to the patient as to have the power to waive the privilege conferred by the statute.

While most of the jurisdictions agree that the privilege conferred by the statute may be waived after the death of the patient by the proper represenative, there is a square conflict of authority as to who stands in such representative relation to the deceased patient as to be able to waive the privilege given by the statute. Some courts hold flatly that heirs at law who are contesting the will of the deceased patient, are not representatives of the patient, and cannot waive the privilege of the statute. The leading jurisdiction so holding is Indiana. *Towles* v. *McCurdy* (1904), 163 Ind. 12, 71 N. E. 120; and *Heuston* v. *Simpson* (1888), 115 Ind. 62, 17 N. E. 261, 7 Am. St. Rep. 409. These cases hold that contesting heirs at law cannot waive the privilege of the statute because they are not representatives of the testator.

Now the fallacy in the reasoning of the Indiana cases is that they decide that the contesting heirs at law cannot waive the privilege of the statute, not because such power of waiver dies with the patient, but because the contesting heirs at law are not representatives of the deceased patient.

This is pointed out clearly in the case of *Winters* v. *Winters* (1897), 102 Ia. 53, 63 Am. St. Rep. 428.

To the same effect is the case of *Fish* v. *Poorman* (1911), 85 Kans. 237, 115 Pac. 998.

It seems to us that the most reasonable and most logical interpretation of these privileged communication statutes is that, in will contests, all who claim under the deceased patient are equally his representatives for the purpose of waiving the privilege conferred by the statute, whether they be proponents or contestants of his will. Certainly those, who are his blood kin will be more zealous in protecting his character and reputation from discredit, than the majority of personal representatives, who frequently bear no relation to the deceased.

There are several jurisdictions which have construed in this way statutes with regard to privilege communications between attorney and client. The statutes are similar in

character to the statutes regarding communications between physician and patient, and are to that extent authority for our contention. *In re Green's Estate* (1907), 102 Me. 455, 67 Atl. 317; *Holyoke* v. *Holyoke's Estate* (1913), 110 Me. 469, 87 Atl. 40; *Glover* v. *Patten* (1897), 17 Sup Ct. Rep. 411, 165 U. S. 394.

The Indiana doctrine in its logical application will finally result in the finest flower of absurdity. In the case of *Heaston* v. *Krieg* (1907), 167 Ind. 101, 77 N. E. 805, 119 Am. St. Rep. 475, it was held that in an action by the executor of a subsequent will, to set aside the probate of a prior will, the executor of the prior will, having attacked the execution of the subsequent will on the ground of the mental incapacity of the testator at the time of the making of the subsequent will, could not offer in evidence the testimony of an attending physician to establish these facts. It is hard to see why the executor of the subsequent will could object to the introduction of this testimony, if the executor of the prior will was really the representative of the deceased. If the executor of the prior will had offered in evidence the testimony of an attending physician to establish the sanity of the testator at the time of the making of the prior will, this testimony would have been admitted. Now, if the executor of the subsequent will had offered in evidence the testimony of an attending physician to show the sanity of the patient at the time of the making of the subsequent will, would the Indiana courts have permitted the subsequent executor to waive the privilege of the statute, if the prior executor had objected? If they should permit the introduction of such testimony, they could do so only on the theory that the subsequent executor was the personal representative of the deceased.

We submit that it is hardly a tenable legal theory that the patient could have by two distinct and inconsistent wills, created two different personal representatives, each of whom would be representative of him at one and the same time. Now if the executor of the prior will was really the representative of the deceased patient and the subsequent

executor was not, why then would the subsequent executor have any power to object to the waiver of the privilege conferred by the statute? And did not the executor of the prior will have the power to make such waiver, and under the Indiana theory, would not conditions have been completely reversed if the executor of the subsequent will had been successful in having his will probated first? . If this is true, and it seems to us that it is, then the inevitable logical result of the Indiana theory will be, in the cases where more than one will is produced, a foot race between the executors from the deathbed of the deceased testator to the office of the chancery clerk.

*McLean & Rowe, W. T. Knox* and *Green & Green,* for appellee.

Where, as here, it is conceded by appellants that Dr. Kane's deposition is incompetent unless the privilege has been waived, under section 6380, Hemingway's Code. (a) Is the privilege under section 6380, personal and to be exercised only by the patient, or, (b) Can it be waived by the personal representative of the patient? (c) If so, whether the heirs at law, claiming against the will, can waive the privilege in a contest with the executor and other heirs and legatees claiming under the will; (d) Can a contestant of the will, either heir or legatee, or both, waive the privilege as against the other heirs, legatees and executor, and; (e) Can two heirs at law, who are also legatees under the will, but have not accepted the legacies, join with four heirs at law who are legatees and devisee under the will, and who have accepted the legacies and devises under the will, over the objection of the other heirs and legatees and executor, waive the privilege, and have Dr. Kane testify to privileged communications.

The particular case at bar is not covered by the propositions contended for by appellants as to waiver. Appellants concede that the deposition of Dr. Kane and its contents are privileged under section 6380 of the Code. Conceding

that the communications and testimony of Dr. Kane in the deposition are privileged, appellants contend that they, as heirs at law, can in this proceeding to contest a will, waive the privilege and have the privilege communications disclosed by Dr. Kane.

The precise question, is whether two heirs at law who are also legatees under the will, and four heirs and legatees and a devisee under the will, who have accepted the legacies and devise and claim under the will are competent to waive the privilege, as against the executor, the other heirs at law, who are also devisees and legatees, and others who are legatees under the will.

The contention of appellants is that the personal representative of the testatrix can waive the privilege, and that these appellants are the personal representatives, because they are heirs, or would be heirs if the will was annulled.

The rule is well settled, even in cases where the heirs at law, are competent to waive the privilege under proper circumstances an heir at law, especially a legatee, and devisee who have received and claimed under the will, are incompetent to waive the privilege when they contest the validity of the will.

Whatever may be the rule in some other states as to the heirs and personal representative being allowed to waive the privilege, and call the family physician to testify in contest to support of the will, there has been no case cited in which such heirs, even though not a legatee, as here, has been permitted to contest the will, and as a contestant, waive the privilege and have the family physician to testify.

Appellants cite and rely on cases from Indiana. In *Heaston* v. *Kreigh*, 167 Ind. (1906) 101, while holding that the executor, as the personal representative, may waive the privileges to a physician's evidence to uphold the will, that contestants cannot waive, saying at page 118: "A waiver must have its basis in the right of the decedent and in such a case as this it can only be invoked by the executor who is seeking to support what *prima facie* at least was

the valid act of his testator. See *Towles* v. *McCurdy* (1904), 163 Ind. 12; *Brockney* v. *Fogle* (1901), 146 Ind. 535; *Towles* v. *McCurdy,* 163 Ind. App. 12, 13-16 (1904) holds: "Where probate of a will was resisted on the grounds of insanity, and undue influence the heirs cannot introduce the evidence over the objections of devisees, the testimony of the family physician as to communications made to him by the testator, as his patient, in the course of his professional business, and facts learned or observed by him as such physician."

The contest was between the children of the decedent, one of whom was sole devisee and legatee under the will. In *In re Mensbachs Estate,* 150 Mich. (1907), 348, it was held that in a contest of a will by the mother and brothers and sisters, next of kin, that contestants could not waive the privilege and call on an attending physician on the question of testamentary capacity, saying that in *Fraser* v. *Jenninson,* 42 Mich. 225, it was held that the personal representative might waive the privilege but,

"That principle has no application to this case for contestant is not the representative of the testator. She stands in this suit in the attitude of an adverse party. She had, therefore, no right to waive the statutory privilege.

*Re Estate Nelson,* 132 Calif. (1901) 182, in a contest of a will, holds: "The physician who attended testator during his last illness and whose information as to his condition was acquired during such attendance for the purpose of prescribing for him as a physician, is incompetent to testify as to his condition, in answer to questions asked by the contestants, tending to show that the testator had not mental capacity to make a will or codicil thereto.

The information which a physician acquires from his patient, for the purpose of prescribing for him, is given for the benefit of the patient alone, and not for the purpose of creating a right in others, and does not carry any implied request to disclose it in behalf of others in matters with which it is wholly disconnected. Citing *Estate of Flint,* 100 Calif. 391, and *Estate to Redfield,* 116 Calif. 637.

*Estate of Flint,* 100 Calif, 391, in a will contest, holds that the physician was incompetent, and "An heir of decedent, who contests the probate of a will with a devisee, is not the representative of the deceased, and cannot waive the privilege, attaching to communications from the deceased to his physician." Citing *Briggs* v. *Briggs,* 20 Mich. 32; *Streeter* v. *City,* 23 Mo. App. 244; *Freel* v. *Railway,* 97 Calif. 40; *McLaity* v. *Brotherhood,* 172 S. W. (Wis.) 714; *Auld* v. *Cathro,* 32 L. R. A. (N. S.) (1910) 71; *Gratton* v. *Mutual Life Ins. Co.,* 80 N. Y. 296, 36 Am. R. 617; *Westover* v. *Aetna Life Ins. Co.,* 99 N. Y. 56, 52 Am. St. R. 1; *Reinheim* v. *Dennin,* 102 N. Y. 573, 57 Am. R. 770; *Lowder* v. *Wheeley,* 101 N. Y. 239; *Re Coleman,* 111 N. Y. 220; *Re Myer,* 184 N. Y. 54, 6 A. & E. Annotated Cases, 26; *Boyle* v. *Northwest Mutual Relief Assn.,* 95 Wis. 312; *Re Hunt,* 122 Wis. 460; *Re Van Alstein,* 26 Utah 193; *Conn. Mutual Life Ins. Co.* v. *Union Tr. Co.,* 112 U. S. 250, 28 L. Ed. 708; *Supreme Lodge* v. *Meyer,* 198 U. S. 508, 49 L. Ed. 1146; *Re Flint,* 100 Calif. 391; *Harrison* v. *Railroad,* 116 Calif. 156; *Re Redfield,*—Calif. 637; *Re Nelson,* 132 Calif. 182; *Re Brunndl,* 102 Wis. 45. And the court there reviewed the cases and the reason of the rule.

This case is annotated in 32 L. R. A. (N. S.) 73, and states that as to waiver of privilege, that the weight of authority is with the rule of the text. See, also, 10 Am. & Eng. Annotated Cases, 1118 and note; *Westover* v. *Aetna Ins. Co.,* 99 N. Y. 36, 52 Am. Rep. 1; *Reinhem* v. *Denin,* 103 N. Y. 572; *Ioder* v. *Wheepley,* 111 N. Y. 239, supra.

"The language of the statute is plain, unambiguous, and so written; and it is not for us to change it, or to hold that the legislature meant something different from what they plainly expressed in the law." *Yerger* v. *State,* 91 Miss. 822; *Hesdorffer* v. *Hiller,* 71 So. 166; *Hammel* v. *Southern Ry. Co.,* 74 So. 277; *Fidelity & Guaranty Co.* v. *Hood,* 87 So. (Miss.) 115; *Sovereign Camp, Woodmen of the World,* v. *Farmer,* 77 So. 655; *Messina case,* 67 So. 965; *Briggs* v. *Briggs,* 20 Mich. 34; *Perkins* v. *Guy,* 55 Miss. 178; *Holyoke* v. *Holyoke,* 110 Maine —; *Grover* v. *Patten,* 165 U. S. 394,

cited, is not applicable. It arose in the District of Columbia, and was a bill to construe a will, not a proceeding to contest one. The court there held that the communication to the attorney was not privileged, and that in a contest between the heirs and next of kin, the rule did not apply.

Under section 1577, Hemingway's Code, it is held in *Whitehead* v. *Kirk,* 104 Miss. 776, 62 So. 432; *Cooper* v. *Bell,* 75 So. (Miss.) 767; *Helm* v. *Sheeks,* 77 So. 820, and *Nesbett* v. *Besbett,* 70 Miss. 572, that a contest of a will or between heirs and devisees under a will, was a transaction arising in the lifetime of the testator, and that the heirs, widow, devisees and legatee are incompetent to testify to the mental incapacity of the testator.

This ruling in Mississippi controls and shows that *Glover* v. *Patten,* cited, is not authority.

Smith, C. J., delivered the opinion of the court.

This is a proceeding in which the appellants, heirs at law of the testatrix, seek to have the will of Mrs. Ella A. Lay, deceased, set aside on the ground of undue influence and mental incapacity. The issue was submitted to a jury, which returned a verdict upholding the validity of the will, and there was a decree accordingly. The ruling of the court below assigned for error is the exclusion of the testimony of a physician relative to the alleged mental disability of the deceased, he having treated her therefor during her lifetime.

Section 3695, Code of 1906 (section 6380, Hemingway's Code), is as follows:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

The contention of the appellant is: "The power to waive the privilege conferred upon the patient by the statute does not die with him, but may be exercised after his death by parties standing in a personal. or representative relation as regards such patient."

The statute in plain and unambiguous language limits the right to waive the privilege to the physician's patient, and the right must be so limited by the courts, unless the manifest reason and obvious purpose of the statute would be sacrificed by adhering to a literal interpretation of its language. *Koch* v. *Bridges,* 45 Miss. 247; *Yerger* v. *State,* 91 Miss. 802, 45 So. 849; *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392.

The manifest reason and obvious purpose of the statute is to enable a patient to disclose his infirmities to his physician in order that the physician may prescribe for his disease without fear that his feelings will be shocked or his reputation tarnished by their disclosure by the physician without his consent, which purpose will not only not be sacrificed by giving the words of the statute their usual and ordinary meaning, but on the contrary, will be sacrificed unless its words are given that meaning. The statute does not limit the privilege to the life of the patient, neither does it confer upon his heirs or devisees who may quarrel over his property the right to tarnish his reputation by causing his physician to disclose his infirmities.

*Affirmed.*