## Adams v. Williams

*Charles L. Miller*, for plaintiff.
*Windolph & Mueller*, for defendant.

SCHAEFFER, J., March 29, 1940—In this action of trespass plaintiff, as owner of a truck, sued defendant, as owner of the automobile, for its negligent operation by defendant's son. The court entered a compulsory nonsuit. The question involved is the liability, if any, of the father for the alleged negligence of his minor son who was driving the father's automobile with the father's permission on the son's return to Franklin and Marshall College at Lancaster, Pa., to begin his junior scholastic year.

The evidence shows that the son used the car of his father with the latter's consent. The son had a driver's license and at the time of his fatal accident was 20 years of age. The son had two other occupants in the car who were also students at Franklin and Marshall College. One of them, Arthur Jenkins, was to drive the car back from Lancaster to the father's home in Nesquehoning, Pa., and then return to college later. It was testified, inter alia, as follows:

"BY MR. WINDOLPH:

Q. Did you direct your son, on the day of the accident or any other time, to use this car to come to Lancaster?

A. No, I did not.

Q. Was he to perform any errands for you in Lancaster, or do any business for you?

A. None at all.

Q. Did he ask you for permission to use the car?

A. Yes.

Q. And did you grant the permission?

A. I did.

Q. Had you instructed or ordered him to attend Franklin and Marshall College, or was that his own wish?

A. That was his own wish.

CROSS-EXAMINATION BY MR. MILLER:

Q. Did you acquiesce in that wish, as to his attending Franklin and Marshall College?

A. It was between him and the superintendent of public schools, that he decided to attend Franklin and Marshall College.

Q. That is, he chose Franklin and Marshall as against Haverford, Swarthmore, or some other college, on the recommendation of the superintendent of public schools?

A. Yes.

Q. But he attended college with your entire approval, did he not?

A. Yes.

Q. And you, I believe, have said that you paid his bills for the first two years?

A. Yes, I did.

Q. And had given him money to pay the third year?

A. Yes."

Under the evidence can the negligence of the son be imputed to the father? In plaintiff's brief it is said:

"It is admitted that neither the family relationship nor the permission granted the son to use the automobile renders defendant liable for its negligent operation. Under the decisions of the appellate courts of this State, the son must be about his father's business, or engaged in a trip in which the father has more than a sentimental or paternal interest, to render the father liable."

Plaintiff relies on Kunkle v. Thompson, 67 Pa. Superior Ct. 37 (1917), in which Judge Head said:

"Where liability for such act is sought to be imposed on the parent, it must appear the act was committed at a time when the minor was engaged in the furtherance of the parent's business or pleasure, or in and about a matter in which he had an interest."

In that case the owner of an automobile permitted his son, 19 years of age, to drive the automobile whenever he desired. The son had been educated at a business college and had been practically manumitted, having been employed by different persons. He paid for his own education from his earnings. On the day of the accident he was returning home from an errand in a neighboring town about a position. The court said (p. 41):

"We do not suppose it could be successfully urged that in this particular case the son was engaged in the furtherance of the parent's business or pleasure. The conclusion reached by the learned judge below, if we read his opinion correctly, appears to rest on the theory that the father was interested, within the meaning attached by the law to that term, in the errand on which the son was engaged. Can it be that the word 'interest' is used in the authorities in a sense so broad as to justify the conclusion reached? A father is interested, in a sense, in almost every act performed by his son and especially in those which have for their purpose and object the advancement of the son in his career, profession or occupation. It is not in that sense that the law regards the term, because a man may have an interest of the same character, though perhaps not so intensive in degree, in the acts of many others to whom he is related by ties of blood or affection."

Plaintiff contends that in the instant case the "trip was clearly the father's business, since he had decided to give his son the advantage of a college education. . . . If the trip was a matter in which the father had a definite interest, he is liable."

In the recent case of Hildock v. Grosso, 334 Pa. 222 (1939), the automobile was purchased by the father, who was unable to drive a car, for the pleasure and convenience of his family. On the day of the accident the son, who had a driver's license, asked his father for the use of the automobile to go to Uniontown in order to make arrangements for his approaching marriage and the father allowed him the use thereof. The Supreme Court said (p. 224):

"No agency of the son for the father or relation of master and servant was created under the circumstances. The son operated the car on his own account and for his own purpose.

"The cardinal principle applicable to the factual situation here presented was succinctly stated by the late Mr. Justice Sadler in *Piquet v. Wazelle*, 288 Pa. 463, 467, 136 A. 787: 'If the car, though acquired for the benefit of the family, is not operated at the time of the accident on behalf of the owner and in furtherance of his business, or that of the family, even though it was permissively used, no liability follows, for it cannot be said that the driver was his servant or agent.'"

In the latter case it was held that where a father purchases an automobile for family use and permits his son, 19 years of age, to use the car to attend a dance, the father is not liable for injuries caused by the negligent operation of the car by his son while so using it. In Arndt et al. v. Brockhausen et ux., 126 Pa. Superior Ct. 269 (1936), the wife was taking a trip in her husband's automobile to purchase dresses and shoes which she intended to wear at work in a business enterprise, consisting of a summer resort near Stroudsburg, conducted by the husband and wife. It was held that the husband is not liable for the negligence of his wife unless she is operating the automobile as his agent. Judge Keller in his opinion said (275): "That would be carrying the meaning of 'furtherance of the business' entirely too far." In Fox v. Cahorowsky, 66 Pa. Superior Ct. 221 (1917), the mother permitted

her minor son, 19 years of age, to use generally her automobile. As stated in the opinion: ". . . she bought it for the comfort and improvement of the health of her minor son. . . . It is not of the strongest character but its weight was for the jury rather than the court."

No Pennsylvania case has been found directly ruling the question at issue in the case at bar. The authorities differ in other States on this question. Many of those cases relate to children attending school rather than college and particularly where the age was such as to make their attendance at school compulsory. In others, the doctrine of family use is recognized to a larger extent than in this State, thereby giving a wider scope to what comes within the father's business or interest in his family. In Nebas v. Werkmeister et al., 221 Mo. App. 173, 180, 299 S. W. 601 (1927), State of Missouri, it was held that the father, owner of the car, is liable for the negligence of his minor son, 17 years of age, while using the automobile in going to and from high school under the doctrine of "family purpose." In that case "the father continuously allowed him to take the machine to go to school, which was quite some distance from his home, and . . . this was done so the son could return in time to work around the place." In Hardy v. Smith, 68 F. (2d) 992 (1934), District of Columbia, defendant's son, 19 years of age, was at the time of the accident driving his father's car to school with the father's knowledge and permission. The father "had turned it over to his son for use in going to school and otherwise;" and the father was held liable on the theory of agency. In Meinhardt v. Vaughn, 159 Tenn. 272, 17 S. W. (2d) 5 (1929), State of Tennessee, the father paid for the motorcycle registered in the name of his son, 17 years of age. It was held that the father was liable for injuries caused by the son in operating the motorcycle when going to school. The court in its opinion referred to the son going to and from school under his father's direction. In Coleman v. Rollo, 50 S. W. (2d) 391 (Ct. of Civil App. of Tex. 1932) it

was decided that an automobile used to send the owner's children to school was a family car and the family car doctrine was held applicable. In Littler v. Voigt, 21 Ohio App. 285, 153 N. E. 311 (1925), State of Ohio, it was held that where there is no evidence to show either express or implied authority of a son to use the automobile of his father in attending school under statutory provisions relative to compulsory school attendance, the father is not liable for the negligence of the son in operating the automobile for the purpose of going to and returning from school. In Murphy v. Willingham, 160 Miss. 94, 133 So. 213 (1931), State of Mississippi, the evidence showed that defendant's 11-year-old son was permitted but not required to use defendant's automobile in going to school and that the distance from home to school was not such as to impose on the father the duty of providing means of transportation. It was held that the son was not the agent of his father in driving the latter's automobile to school and that the father was not liable for injuries to a pedestrian caused by the son's alleged negligent driving. In Green, etc., v. Smith, 153 Va. 675, 151 S. E. 282 (1930), State of Virginia, the son was attending boarding school, having been required to attend by his father. An accident occurred while the son was driving his father's automobile in taking some of his clothes to a pressing club and some of his clothes to school. The court held that the son generally was not the agent or servant of the father in attending school and while in a sense the son's education is the business or undertaking of the father, the son is "primarily engaged in his own design, business or undertaking and not that of the father, and is not in so doing acting as the agent or the servant of the father so as to render the father liable for his torts, even though with the knowledge and permission of the father he is using his father's automobile to carry out his (the son's) purpose or design", citing among other cases Kunkle v. Thompson, supra. It was held to be a case for the jury because there was evi-

dence that the father had ordered and directed the son to use the automobile for that purpose.

The cases relating to a chauffeur driving the owner's car under an order of a member of the owner's family are distinguishable. They involve the relationship of master and servant and the question whether the chauffeur acted within the scope of his employment at the time of the accident is ordinarily for the jury: Moon v. Matthews, 227 Pa. 488; Hazzard v. Carstairs, 244 Pa. 122.

A father is interested naturally in his son's religion, education, athletic and social activities. Paternal concern for the welfare of a minor child is not sufficient to create legal liability for the child's tort. The factors stressed by plaintiff that defendant's son was returning to college to start his third college year and possibly carrying baggage, and that the automobile was to be returned to the father's home the next day by a college friend of defendant's son, are not sufficient to establish defendant's liability. It was evidently the son's arrangement to have Jenkins return with the automobile the following day. It does not follow from the evidence that Jenkins would have been defendant's agent in returning the car. The father was under no obligation to furnish transportation to the two other college students who were occupants of the car. In plaintiff's amended statement of claim it is averred, inter alia, that defendant's son "was using said automobile on defendant's business"; that "defendant's said son was on his way to Lancaster to continue his education as directed by his father, the defendant"; and that "defendant's son Cromwell was defendant's agent, acting under defendant's authorization." The evidence does not sustain these allegations.

The evidence fails to show the relationship of master and servant or of principal and agent between the father and the son at the time of the accident. The court concludes that the son was not engaged in his father's business either in returning to or in attending college. Under the particular facts and circumstances of this case the

314

son was operating the car "for his own purpose". The family-car doctrine under the authorities of this State is not applicable. Accordingly, defendant is not liable, under the evidence of this case, for the alleged negligence of his son and the latter's negligence is not imputable to his father.

And now, March 29, 1940, the motion to strike off the nonsuit is refused.